UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

JOSHUA PAUL HOLDER,           )
                              )
        *Plaintiff*,          )
                              )
v.                            )         No. 1:17-CV-00186-SKL
                              )
COMMISSIONER OF SOCIAL SECURITY,  )
                              )
        *Defendant*.          )

## MEMORANDUM AND ORDER

Plaintiff Joshua Paul Holder ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying him disability insurance benefits ("DIB") and supplemental security income ("SSI"). Each party has moved for summary judgment [Docs. 22 & 24] and filed supporting briefs [Docs. 23 & 25]. This matter is now ripe. For the reasons stated below: (1) Plaintiff's motion for summary judgment [Doc. 22] will be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 24] will be **GRANTED**; and the decision of the Commissioner will be **AFFIRMED**.

## I.     ADMINISTRATIVE PROCEEDINGS

Plaintiff filed his application for DIB on February 7, 2014 [Doc. 14 ("Tr.") at Page ID # 387] and for supplemental security income ("SSI") on February 11, 2014 (Tr. 343), alleging disability beginning November 16, 2013[1] (Tr. 339, 343). Plaintiff's claims were denied initially

---

[1] There is some confusion in the record regarding the dates Plaintiff's applications were filed and the date of Plaintiff's alleged onset of disability. The parties and the ALJ state that Plaintiff's DIB and SSI applications were filed on November 4, 2013; however, the applications in the record are dated February 7, 2014 (DIB), and February 11, 2014 (SSI) (Tr. 339, 343). The ALJ states that Plaintiff's alleged onset date ("AOD") is November 4, 2013 (Tr. 190). The applications, however,

and on reconsideration at the agency level.  On September 15, 2014, Plaintiff requested a hearing

before an administrative law judge ("ALJ") (Tr. 296), which was held in Chattanooga, Tennessee

on March 29, 2016 (Tr. 211-42).  On May 4, 2016, the ALJ found that Plaintiff was not under a

disability as defined in the Social Security Act from the alleged onset date through the date of

decision (Tr. 190-200).  The Appeals Council denied Plaintiff's request for review, making the

ALJ's decision the final decision of the Commissioner (Tr. 1-6).  Plaintiff timely filed the instant

action [Doc. 1].

## II.    FACTUAL BACKGROUND

### A.    Education and Employment Background

Plaintiff was born on May 29, 1986, making him as a "younger individual" on the alleged

onset date (Tr. 198).  He has a high school education and is able to communicate in English (Tr.

199).  He has past relevant work as an electrician's helper, a construction worker, a line cook, and

a batter mixer (Tr. 198).

### B.    Medical Records

In his Disability Report, Plaintiff alleged disability due to a "back injury" (Tr. 372), and in

his Function Report, he listed chronic leg and back pain, and an inability sit, stand, or walk for

long periods due to previous back surgeries and another herniated disc (Tr. 382).  Plaintiff [Doc.

_____

both list the AOD as November 16, 2013 (Tr. 339, 343).  Plaintiff's brief submitted to the ALJ
identifies both November 4 and November 16, 2013 as the AOD (Tr. 422), and Plaintiff testified
at the administrative hearing that the AOD was November 4, 2016 (Tr. 215).  The parties do not
address the inconsistencies in the dates, and the Court finds the inconsistencies are inconsequential
for purposes of ruling on the parties' motions for summary judgment.  The Court will refer to the
application dates as February 7, 2014 (DIB), and February 11, 2014 (SSI), and the AOD as
November 16, 2013.

23 at Page ID # 700-05] and the ALJ (Tr. 193, 195-98) each set forth a detailed, factual recitation of Plaintiff's medical record, vocational record, and the hearing testimony. Defendant generally adopts the facts set forth by the ALJ, but includes citation to the medical record throughout her argument [Doc. 25 at Page ID # 718, 720-29]. While there is no need to summarize the medical records herein, the relevant records have been reviewed.

### C. Hearing Testimony

At the hearing before the ALJ on March 29, 2016, Plaintiff and a vocational expert ("VE") testified. The Court has carefully reviewed the transcript of the testimony from the hearing (Tr. 211-243).

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration ("SSA")

determines eligibility for disability benefits by following a five-step process. 20 C.F.R. §

404.1520(a)(4)(i-v). The five-step process provides:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The

claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner

bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is

capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010)

(citations omitted).

**B.  The ALJ's Findings**

The ALJ found Plaintiff meets the insured status requirements through December 31, 2018

(Tr. 192). At step one of the five-step process, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since the AOD (Tr. 192). At step two, the ALJ found Plaintiff had the

following severe impairments: "degenerative disc disease status post left and right side

hemilaminectomy, and foraminotomy and facetectomy with transforaminal discectomy on both

4

sides" ("DDD") (Tr. 192-93). At step three, the ALJ found Plaintiff does not have an impairment or combination of impairment that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 193-94).

Next, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform:

> [S]edentary work as defined in 20 CFR 404.1567(a) and 416.967(a) and the following: the claimant can lift and carry 10 pounds occasionally, sit six hours in an eight hour workday, stand and walk two hours in an eight hour workday, and would require a 30 minute sit/stand option. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but could never climb ladders, ropes, and scaffolds, or work at unprotected heights or with dangerous machinery. The claimant can understand, remember, and carry out simple, routine instructions, and could make work-related judgments typically required for unskilled work.

(Tr. 194). At step four, the ALJ found Plaintiff was unable to perform any past relevant work (Tr. 198). At step five, however, the ALJ found Plaintiff was able to perform other work existing in significant numbers in the national economy including inspector, final assembler, ticket checker, and order clerk (Tr. 199-200). These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Act from the alleged onset date through the date of the ALJ's decision (Tr. 200).

## IV.    ANALYSIS

Plaintiff asserts this matter should be reversed and/or remanded under sentence four for several reasons: (1) "The ALJ's decision to assign little weight to [the treating physician's] opinion and some weight to the stage agency physicians' opinions is not supported by substantial evidence and violates the law." (2) "The ALJ inaccurately reported Plaintiff's medical evidence, thus rendering her subsequent RFC not supported by substantial evidence." (3) "The ALJ's

mischaracterization of Plaintiff's ADL's renders her decision not supported by substantial evidence." [Doc. 23 at Page ID # 707, 711, 712].  The Court will consider each issue in turn.

### A.      Standard of Review

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (Citing 42 U.S.C. § 405(g)).  Under a sentence-four remand, the Court has the authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing."  42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration."  *Morgan v. Astrue*, No. 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence.  42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McClanahan*, 474 F.3d at 833 (citations omitted).  Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight."  *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).  If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the

court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence that was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

### B.    The ALJ's Consideration of the Medical Opinions

Plaintiff first argues the ALJ committed a "fatal flaw" in weighing the medical opinion evidence [Doc. 23 at Page ID # 707-10]. The record contains an opinion from March 2016 from Plaintiff's treating physician, Gregory Ball, M.D. (Tr. 619-20), and the opinions of nonexamining

state agency physicians, James Gregory, M.D., and Deborah Webster-Claire, M.D., offered in May

2014 and August 2014, respectively (Tr. 246-49, 265-67).

The ALJ discussed Dr. Ball's opinion in detail:

> Turning to opinion evidence, I reviewed [a] medical opinion regarding the claimant's functional limitations authored by Gregory Ball, M.D., in March 2015 [sic] (9F). Specifically, it appears that Dr. Ball determined that the claimant had lumbar post-laminectomy syndrome with radiculopathy restricting the latter to standing and walking 15 minutes at one time and two hours in a workday, sitting 45 minutes at one time and four hours in a workday, occasional lifting of 15 pounds and no frequent lifting, frequent gross and fine manipulating with his bilateral upper extremities, and occasional reaching in all other directions with the bilateral upper extremities. Dr. Ball further remarked that the claimant would have to elevate his legs or lie down one to two hours during an eight hour period, would require 15 minute breaks every hour, be absent from work two or more days per month, and otherwise experience moderate to severe pain (9F/2-3).

(Tr. 196-97).

The ALJ also detailed Dr. Gregory's opinion and Dr. Webster-Clair's opinion, discussing

how they both found Plaintiff had severe DDD, but further found that he remained capable of

"lifting and carrying 50 pounds occasionally and 25 pounds frequently, standing and walking about

six hours in an eight hour workday, sitting about six hours in an eight hour workday, and frequent

climbing of ramps, stairs ladders, ropes, and scaffolds, balancing, stooping, kneeling, crouching,

and crawling." (Tr. 197 (citing to Dr. Gregory's and Dr. Webster-Clair's opinions)).

The ALJ weighed the opinions as follows:

> I give little weight to Dr. Ball's opinion. First, I note that Dr. Ball does not appear to be a State agency consultant familiar with the disability program or its evidentiary requirements. Second, however, I am mindful of the apparent treatment relationship shared between Dr. Ball and the claimant (10F). Yet, in any case, Dr. Ball's aforementioned conclusions finding that the claimant is incapable of

8

sitting more than 45 minutes at one time or more than four hours in a typical eight hour workday, for example, to be a marked over exaggeration of the claimant's actual physical symptomology. As support, I point out that the claimant's apparent medical treatment after November 2013 to be essentially conservative in nature consisting primarily of routine medication management with aforementioned epidural steroid injection that same November (8F/114). Dr. Ball's apparent conclusions are further inconsistent with his own treatment notes dated in 2016 insofar as it reflects [a] similar body of conservative treatment despite his suggestion that the claimant is unable to stand and walk even 15 minutes at one time (10F). In light of such stated inconsistencies and the claimant's own description of his activity levels, Dr. Ball's opinion is thus afforded only little weight in this decision.

. . . .

I give some weight to Drs. Gregory and Webster-Clair's opinions in this analysis. Initially, unlike Dr. Ball, Drs. Gregory and Webster-Clair are State agency consultants familiar with the disability program and its evidentiary requirements and reviewed all the documentary medical evidence available at the time of their respective evaluations. Nevertheless, neither Dr. Gregory or Dr. Webster-Clair had the opportunity to independent examine the claimant. Furthermore, Drs. Gregory and Webster-Clair were necessarily unable to review additional evidence dated after May and August 2014 which reflects an extended period of stability with respect to the claimant's stated lumbar pain (8F, 10F). At the same time, however, this same body of evidence documents that the claimant's continued complaints of persistent back pain have been confirmed via CT scan performed as recently as March 2016 (10F/17-19). I am further mindful that the claimant was counseled to pursue medial branch block that March as well (10F/6). Such evidence persuasively shows that the claimant is more limited than originally proposed by Drs. Gregory and Webster-Clair insofar as they found the claimant to be capable of a medium exertional level. In general, I also point out that such evidence was otherwise unavailable at the time of Drs. Gregory and Webster-Clair's respective evaluations. Consequently, their opinions are given only some weight in the present analysis.

(Tr. 197).

In considering a claim of disability, the ALJ generally must give the opinion of the claimant's treating physician "controlling weight." 20 C.F.R. §§ 404.1527(c); 416.927(c)(2).[2] But the ALJ must do so only if that opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id.* If the opinion is not given controlling weight, as here, the ALJ must consider the following factors to determine what weight to give it: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source," as well as "other factors." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527). The ALJ is not required to explain how he considered each of these factors, but must nonetheless give "good reasons" for giving a treating physician's opinion less than controlling weight. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011); *see also Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (holding "good reasons" must be provided "that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight." (quotation marks omitted) (citing *Wilson*, 378 F.3d at 544)); 20 C.F.R.

---

[2] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c; 416.920c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."); s*ee also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852-57 (Jan. 18, 2017). The new regulations eliminate the term "treating source," as well as what is customarily known as the treating physician rule. As Plaintiff's application was filed before March 27, 2017, the treating physician rule applies. *See id.* §§ 404.1527; 416.927.

§§ 404.1527(c)(2) & 416.927(c)(2) (the ALJ must "give good reasons in [the] notice of determination or decision for the weight . . . give[n the] treating source's medical opinion.").

Plaintiff argues Dr. Ball's opinion is well-supported by clinical findings and not inconsistent with other substantial evidence of record, such that it should have been given controlling weight [Doc. 23 at Page ID # 707-08]. He further asserts that the factors weigh in favor of giving far more weight to Dr. Ball's opinion and that the ALJ did not give good reasons for refusing to do so [*id.* at Page ID # 708-10]. He argues it was "illogical" for the ALJ to give "some weight" to the state agency physicians' opinions, and only "little weight" to Dr. Ball, considering they did not examine Plaintiff or have the entire case record, and particularly in light of the fact that the RFC the ALJ ultimately adopted was much closer to Dr. Ball's assessment than to Dr. Gregory's and Dr. Webster-Clair's.

It is somewhat incongruous for the ALJ to assign "little weight" to Dr. Ball's opinion and "some weight" to the state agency physicians' opinions, but then to adopt an RFC that more closely matches Dr. Ball's opinion. Nevertheless, after careful consideration, the Court concludes the ALJ's weighing of the medical opinion evidence is supported by substantial evidence and the provision of good reasons. Therefore, Plaintiff's arguments must fail.

First, while the ALJ certainly could have explained her reasoning more artfully, the decision makes clear that she was rejecting the more extreme limitations found by Dr. Ball. The decision also makes clear that she only credited Dr. Gregory and Dr. Webster-Clair to the extent their opinions reflected Plaintiff's physical state at the time they offered their opinions. The ALJ expressly acknowledged that they did not have evidence of a later period of improvement, followed by a period of worsening (Tr. 197). The Sixth Circuit has held that an ALJ's decision to credit the

opinions of state agency consultants, even where the consultants do not have the benefit of the entire medical record, is permissible where the ALJ considers the implications of their not reviewing the entire record. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016) (citations omitted). The ALJ's decision in this case is capable of meaningful review.

Next turning to the more substantive arguments, the Court finds no error with the ALJ's determination that Dr. Ball's opinion was not entitled to controlling weight because the opinion was inconsistent with other substantial evidence in the record.[3] The Court begins by highlighting the extreme limitations posited by Dr. Ball, including an inability to stand/walk for more than 15 minutes at a time or for more than two hours in an eight hour workday, as well as an inability to frequently lift *any* amount of weight. And even under those circumstances, Dr. Ball found Plaintiff would still need to take a "rest break" every fifteen minutes, lie down with his legs elevated for one to two hours a day, and miss two or more days of work per month (Tr. 619-20).

There is substantial evidence in the record inconsistent with such extreme limitations. As Dr. Ball is really the only medical provider from the relevant time period, the inconsistent evidence comes primarily from Dr. Ball's records and from Plaintiff himself. At the March 2016 administrative hearing, Plaintiff reported *extremely* limited activities and interactions with his son, but the timeline of when he allegedly became so limited is not clear (Tr. 216-20). He explained that an increase in his pain began about a year after his second surgery in November 2011 (Tr.

---

[3] Plaintiff states that he "believe[s] once a treating physician's opinion is shown to be well supported, then that is the end of the inquiry." [Doc. 23 at Page ID # 708]. That is contradictory to the relevant regulation's plain language, which provides that a treating physician's opinion is entitled to controlling weight only if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in [the] case record.*" 20 C.F.R. § 416.927(c)(2) (emphasis added). Plaintiff does not cite to any authority to support his interpretation, and the Court rejects it.

195, 216).  By November 2013 (his AOD), he claims he "just couldn't work, period." (Tr. 217).

Yet, in his April 2014 Function Report, Plaintiff reported a fairly high level of activity that included

fishing, playing with and caring for his then two-and-a-half-year-old son, making beds, doing

laundry, using a riding lawn mower without help, and being able to lift 30 pounds (Tr. 384, 386,

387).

And in July 2014, as the ALJ notes, Plaintiff reported his pain was a "10 of 10," yet on

examination Dr. Ball found "no pain behavior," as well as intact sensation, symmetric motor bulk

and tone, and 5/5 strength throughout (Tr. 196, 536, 538).  He was able to stand erect, had only a

"mildly antalgic" gait, and attended the appointment alone (Tr. 538).  Plaintiff was not in physical

therapy and was only being treated with pain medication (Tr. 537, 539).

Two weeks prior to the administrative hearing, on March 15, 2016, a CT scan revealed a

"ventral deformity" that "appear[ed] to compress the left L5 nerve root origin." (Tr. 637-38).

Nevertheless, in an appointment with Dr. Ball two days after the CT scan, Plaintiff's straight leg

raise test results were negative, and while he and Dr. Ball discussed some non-surgical treatment

options, such a medial branch block and a spinal cord stimulator, ultimately Dr. Ball simply

continued the prescription medication and told Plaintiff to return in two months (Tr. 623-27).

Indeed, the appointment notes expressly state that "we need to exhaust simple procedures for

management of his pain before reaching for more advanced techniques," suggesting that Dr. Ball

himself characterized his treatment as conservative (Tr. 623).  This is particularly noteworthy

considering Dr. Ball also repeatedly mentions that Plaintiff has difficultly managing his medication

and requires his parents to "keep his meds locked up" (*see, e.g.*, Tr. 626, 628).

During the same March 17, 2016 appointment, Plaintiff reported to Dr. Ball that he experienced "much difficulty" in walking normally, but on examination, Dr. Ball found Plaintiff had only a slightly antalgic gait and did not use any "devices" (Tr. 624-25). Similarly, in his March 10, 2016, opinion, Dr. Ball found Plaintiff did not require an assistive device of any kind to ambulate and experienced "severe" pain only "occasionally (and never "extreme" pain) (Tr. 620).

Finally, although not specifically discussed by the ALJ, there is scant evidence in the record to suggest any limitation in Plaintiff's upper extremities, yet Dr. Ball limited Plaintiff to only occasional reaching in all directions, and only frequent (as opposed to constant) fine and gross manipulation of Plaintiff's upper extremities (Tr. 619). This is a mystery, as Dr. Ball's records reflect that even when Plaintiff alleged extreme pain in his back, he often reported "no difficulty" opening jars and lifting cups or glasses to his mouth (Tr. 499, 505, 510, 537, 547, 551, 555, 624, 629, 633). He did occasionally report "some difficulty" with one or both of these tasks, but not "much difficulty" (Tr. 515, 520, 526, 532, 542). And his general exams showed no gross abnormalities in his upper extremities, and full rotation of his cervical spine (Tr. 501, 506, 511, 522, 528, 533, 538, 548, 551, 555, 561, 571, 578, 583, 589, 601, 608, 634).

Accordingly, the Court finds there is substantial evidence supporting the ALJ's decision not to afford Dr. Ball's opinion controlling weight.

The Court also finds no error with the weight the ALJ assigned to each of the medical opinions, in light of the factors. The ALJ clearly understood the nature and length of the relationship between Plaintiff and Dr. Ball, as she discussed his records in detail and expressly acknowledge the treating relationship (Tr. 197). Plaintiff's argument criticizing the ALJ's consideration of the state agency physicians' greater expertise and familiarity with "the disability

program and its evidentiary requirements" [Tr. 197; *see also* Doc. 23 at Page ID # 709-10] is wide of the mark. Indisputably, under 20 C.F.R. § 404.1527(c), one of the "other factors" an ALJ may consider in weighing a treating physician's opinion is "the amount of understanding of [Social Security's] disability programs and their evidentiary requirements."

Moreover, as discussed above, Dr. Ball used conservative treatment (pain medication), despite Plaintiff's admitted difficulty in managing his medication. Plaintiff did have one epidural steroid injection on November 25, 2013, but the Sixth Circuit has also characterized this treatment as conservative (Tr. 611; *see Steagall v. Comm'r of Soc. Sec.*, 596 F. App'x 377, 379 (6th Cir. 2015) (describing epidural steroid shots as "conservative")). A characterization of conservative seems apt here, where Plaintiff only received one shot just weeks after his alleged onset date, and did not receive any other injections during the relevant period. The most recent records[4] before the ALJ show that Plaintiff and Dr. Ball discussed further treatment options like a spinal cord stimulator and medial branch blocks, but these were not implemented at the time of the ALJ's decision (Tr. 623, 631). One would expect these or alternative treatment options (like physical therapy or a walking device) to be explored sooner and more definitively if Plaintiff was truly as

---

[4] Plaintiff submitted more recent records from Dr. Ball's office, along with some older medical evidence, to the Appeals Council (Tr. 1-186). These records were not before the ALJ, so the Court has not considered them for purposes of substantial evidence review. *Foster*, 279 F.3d at 357. Evidence of Plaintiff's condition after May 4, 2016, is not relevant to determining whether he is disabled for purposes of this case, which was only decided through the date of the ALJ's decision. Plaintiff does not argue the earlier-dated medical evidence is "new and material," or that "there was good cause for not presenting it in the prior proceeding." *Id.* (quoting *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Accordingly, Plaintiff has waived any argument for a sentence-six remand based on the newly submitted records. *Howington*, 2009 WL 2579620, at *6 (stating that assignments of error not made by claimant were waived).

limited as found by Dr. Ball. Finally, also as noted above, there are inconsistencies between Dr. Ball's opinion and the record as a whole.

The ALJ is "tasked with interpreting medical opinions in light of the totality of the evidence." *Griffith v. Comm'r of Soc. Sec.*, 582 F. App'x 555, 564 (6th Cir. 2014) (citing 20 C.F.R. § 416.927(b); *Bell v. Barnhart*, 148 F. App'x 277, 285 (6th Cir. 2005)); *see also* 20 C.F.R. §§ 404.1527; 416.927. In this case, the ALJ did just that. The Court finds Plaintiff has failed to show the ALJ's decision is not supported by substantial evidence or that the ALJ applied improper legal standards. Plaintiff's motion will be denied in this regard.

### C.     The ALJ's Reporting of the Medical Evidence

Plaintiff next argues the ALJ "cherry picked pieces of the medical record to create a distorted view of the evidence as a whole." [Doc. 23 at Page ID # 711-12]. As a result, he argues, the ALJ's assessed RFC is not supported by substantial evidence.

It is generally recognized that an ALJ "may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding." *Biermaker v. Comm'r of Soc. Sec.*, No. 14-12301, 2016 WL 7985329, at *9 (E.D. Mich. June 13, 2016) (quoting *Smith v. Comm'r of Soc. Sec.*, 2013 WL 943874, at *6 (N.D. Ohio 2013) (other citations omitted)), *report and recommendation adopted,* No. 14-12301, 2016 WL 5027593 (E.D. Mich. Sept. 20, 2016). This "cherry picking" argument is frequently made but seldom successful because "the same process can be described more neutrally as weighing the evidence." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) (holding "we see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence"); *accord DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (noting that "cherry

picking" allegations are seldom successful because crediting them would require courts to re-weigh record evidence). The Sixth Circuit has consistently upheld the discretion vested in ALJs to weigh conflicting record evidence in assessing disability status. *See id*.

Here, Plaintiff has not "persuasively shown that the ALJ erred in conducting [the] difficult task" of weighing the record evidence. *White,* 572 F.3d at 284. Contrary to Plaintiff's argument, the ALJ properly considered and discussed the evidence in the record as a whole and discussed both positive and negative findings.

The ALJ acknowledged Plaintiff's two back surgeries that took place in August 2007 and November 2011 (Tr. 195). As part of that discussion, she also acknowledged: (1) a July 2007 MRI revealed a "large central posterior disc protrusion," which abutted the "left S1 nerve root and displace[d] the right S1 nerve root" (Tr. 443, 195); (2) a September 2011 MRI revealed a "broad-based disc protrusion at L4-L5 with disc reherniation at L5-S1" (Tr. 446, 195); and (3) a November 2011 surgical pathology report revealed "fibrocartilaginous fragments with degenerative changes. Skeletal muscle and bone with cellular trilineage hematopoietic elements present." (Tr. 449, 195). She described how Plaintiff "attested to worsening pain by October 2012," which began radiating to his lower extremities (Tr. 196).

Fast forwarding to the relevant time period, the ALJ discussed a November 2013 MRI that showed "central disc protrusion" at the L4 to L5 level "with mass-effect on the L5 nerve roots" (Tr. 196, 480), leading Plaintiff to get an epidural injection. The ALJ acknowledged that Plaintiff had a period of stability, followed by "acute worsening of pain in February 2014," and an increase in pain by August 2015 (Tr. 196). Plaintiff raises no issue regarding this discussion of the medical

history essentially through 2015, which covers about two of the three years that constitute the relevant period.

Instead, Plaintiff's complaints focus on the ALJ's discussion of Dr. Ball's records from 2016. The ALJ described a February 2016 appointment as "unremarkable," but Plaintiff points out the record of that appointment shows he: (1) reported efforts to get an appointment with a spinal surgeon but was rejected because the surgeon did not accept TennCare, (2) requested additional medication for numbness in his legs, (3) walked with a markedly antalgic gait, and (4) reported a 7/10 on the pain scale [Doc. 23 at Page ID # 711 (citing TR 628-30)]. A CT scan was ordered [*id.* (citing Tr. 630)]. Plaintiff also points out the ALJ failed to discuss significant issues from a March 2016 appointment, where Plaintiff reported a 9/10 on the pain scale, Dr. Ball found "foot drop" and "diminished sensation to light touch left L5," and a spinal cord stimulator was discussed [*id.* (citing Tr. 623-26)].

It is true that the ALJ did not mention each of these points in her opinion. She did, however, discuss the *results* of the CT scan, which surely are more pertinent to Plaintiff's disability claim than the actual ordering of the scan in February 2016. The ALJ specifically noted that the CT scan revealed compression of the L5 nerve root and a disc protrusion that contacted the L3 nerve root, and that medial branch blocks were considered as a result (Tr. 196 (citing Tr. 637-38)). The ALJ also discussed Plaintiff's 2016 complaints of pain and leg numbness, even if she did not note the specific pain level or the fact that Plaintiff requested medication for the numbness (Tr. 196, 197). The ALJ repeatedly discussed Dr. Ball's treatment of Plaintiff, even if she did not discuss every suggested (but not implemented) treatment option. The Court finds this is adequate and does not

amount to "cherry picking." *See Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for his decision to stand.").

Furthermore, the ALJ discussed Plaintiff's history of back and leg problems in a fair amount of detail. The ALJ described how the medical record and Plaintiff's subjective complaints tend to prove the existence of those problems. The ALJ also discussed how, in her determination, that same evidence did not prove Plaintiff is incapable of a reduced range of sedentary work. The ALJ also described the path of Plaintiff's treatment both before and during the relevant period.

Maybe the ALJ could have used a better word than "unremarkable," to describe the results of Plaintiff's February 2016 exam, and perhaps she could have discussed his "antalgic gait" in greater detail, but the Court finds the ALJ's overall description of Plaintiff's conditions and treatment is supported by substantial evidence. Accordingly, the Court finds Plaintiff's RFC is supported by substantial evidence. Plaintiff's motion will be denied in this regard.

**D. The ALJ's Recitation of Plaintiff's Activities of Daily Living ("ADLs")**

Finally, Plaintiff briefly argues the ALJ mischaracterized his ADLs, and then relied on her own mischaracterization to find Plaintiff had a sedentary RFC [Doc. 23 at Page ID # 712-13]. The ALJ's comments concerning Plaintiff's ADLs are part of a larger discussion regarding Plaintiff's subjective complaints:

> [S]everal reasons led me to find the claimant's allegations of disabling limitations generally inconsistent with the totality of the evidence of record. First, as noted above, the majority of the claimant's treatment within the relevant period is essentially conservative in nature. Second, the record simultaneously demonstrates that the claimant has maintained a relatively stable level of functioning throughout the majority of 2015 into 2016 (8F, 10F). Third, I stress that the claimant's treating physicians have not recommended or prescribed more aggressive treatment modalities such as surgical intervention after the alleged onset date. Fourth, the

claimant's stated activities of daily living persuasively indicate that
he retains greater functional capacity than an individual with total
physical disability insofar as he testified to helping his son prepare
for school daily, driving him to and from school, and pursuing some
hobbies such as watching television or using a cell phone (Hearing
Testimony).  I also reviewed the brief submitted by the claimant's
representative (11E).

(Tr. 198).

Plaintiff does not challenge the ALJ's overall assessment of his subjective symptoms, nor

does he address the standards applicable to such a challenge.[5]  Moreover, as is clear from this

memorandum, the ALJ also relied on the medical and opinion evidence, or lack thereof, in

formulating Plaintiff's RFC.  This is all to say that Plaintiff's argument regarding the ADLs misses

the mark—even if the ALJ did "mischaracterize" Plaintiff's ADLs, the ALJ listed additional

reasons for finding Plaintiff's symptoms were not as debilitating as Plaintiff described, and there

is additional support in the record for the ALJ's determination that Plaintiff failed to show he was

incapable of a reduced range of sedentary work.  The Court will nevertheless briefly address

Plaintiff's arguments.

---

[5] Social Security Ruling ("SSR") 16-3p, *Policy Interpretation Ruling Titles II and XVI: Evaluation
of Symptoms in Disability Claims*, rescinds and supersedes SSR 96-7p, *Policy Interpretation
Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility
of an Individual's Statements* for all decisions made after March 28, 2016, and therefore applies to
the ALJ's decision in this case, rendered May 4, 2016.  *See* SSR 16-3p, 2017 WL 5180304 (Oct.
26, 2017) (republished version of SSR 16-3p, originally published at 2016 WL 1119029 (Mar. 16,
2016)).  The two-step process and the factors ALJs consider when assessing the limiting effects of
an individual's symptoms have not changed with the advent of SSR 16-3p; rather, the new SSR
eliminates the use of the term "credibility," because that term is not used in the applicable
regulations, and in order to "clarify that subjective symptom evaluation is not an examination of
an individual's character."  *Id.* at *2.  The relevant factors include a claimant's daily activities, the
"location, duration, frequency, and intensity of your pain or other symptoms," "precipitating and
aggravating factors," the "type, dosage, effectiveness, and side effects" of medication, treatment
other than medication, other measures used to relieve pain or other symptoms, and "other factors
concerning your functional limitations . . ."  20 C.F.R. § 404.1529(c)(3).

Plaintiff concedes he drove his child to school, watched television and used a cell phone during the day [Doc. 23 at Page ID # 712]. As quoted above, this is exactly what the ALJ found, although the ALJ also found Plaintiff helped his son prepare for school every morning (Tr. 198). It is clear from the record Plaintiff does in fact help prepare his son for school in the morning. Plaintiff testified that his mother (the child's grandmother) lays his son's clothes out, and his son eats breakfast at school (Tr. 219-20). Nevertheless, he also explained that he wakes up with his son at 7 a.m., school starts at 8:30 a.m. (although Plaintiff's son arrives "a little earlier"), and the school is a four-minute drive away (Tr. 218-20). While Plaintiff testified that "there's just some days you can't even get out of bed," he also testified that he is usually home alone with his son during that hour-plus-long time period before school, and he apparently has full, or nearly full responsibility for ensuring the child is prepared and arrives on time (Tr. 219-20).

The ALJ also discussed how Plaintiff's April 2014 report states he had "no issues caring for his personal hygiene, preparing basic meals, performing some household chores, getting around independently, driving, shopping in stores, handling money, pursuing hobbies, participating in social activities, following instructions, getting along with authority figures, and handling stress and changes in his routine." (Tr. 195). Plaintiff reported no change in his condition, for better or worse, in June 2014 and again September 2014 (Tr. 401, 408). Plaintiff argues his hearing testimony establishes that, at least by the time of the hearing in March 2016, he had a "general complete lack of significant activity in his daily life," and was no longer able to perform chores or "attend or participate in recreational events with his child." [Doc. 23 at Page ID # 712]. He does not argue and did not testify that he had developed any problems caring for his personal hygiene, or doing any of the non-exertional activities listed above (getting along with authority figures,

handling money, following instructions, getting along with authority figures) since September 2014. Moreover, he testified he quit attending church because the preacher left; and, while he claimed at the hearing that he had only "tried" to go grocery shopping "a couple times in the past *two or three years*," his April 2014 Function Report—prepared less than two years earlier—indicates that he shopped in stores "once every other week," although his mother was doing "all the major shopping." (Tr. 226, 234 (emphasis added), 385).

Accordingly, there are some significant issues with Plaintiff's own descriptions of his ADLs. The Court disagrees with Plaintiff's characterization of a "complete lack of significant activity in his daily life" [Doc. 23 at Page ID # 712]. Preparing a four-year-old for school and driving him there, then picking him up is surely a significant activity requiring some physical ability and mental acumen—to say nothing of what is required for the child's care when school is not in session. The Court acknowledges Plaintiff's testimony that his son has "had to learn at a very young age how to do a lot of things on his own" (Tr. 219), but clearly the child requires assistance in preparing for and attending school, and Plaintiff provides that assistance.

Plaintiff cites *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007), in support of his argument that the ALJ's decision should be reversed based on the ALJ's discussion of his ADLs. In *Rogers*, the ALJ discounted the claimant's credibility in part because of her ADLs. The district court affirmed, and the Sixth Circuit reversed. Regarding the ADLs, the Sixth Circuit found:

> [T]he ALJ emphasized that Rogers is "fairly active" by noting that she is still able to drive, clean her apartment, care for two dogs, do laundry, read, do stretching exercises, and watch the news, "[d]espite her numerous complaints." Yet these somewhat minimal daily functions are not comparable to typical work activities. Moreover, the ALJ's description not only mischaracterizes Rogers'

testimony regarding the scope of her daily activities, but also fails to examine the physical effects coextensive with their performance. Specifically, Rogers indicated that she does very little driving due to her inability to sit for longer than a few minutes; that she engages in light housekeeping only; that the extent of her care for her dog includes opening the door to let him out in the morning; that she likes to read but has difficulty holding a book; that fixing meals usually means a sandwich or cereal; and that buttoning her shirt is difficult due to the numbness in her fingers. The ALJ likewise failed to note or comment upon the fact that Rogers receives assistance for many everyday activities and even personal care from her children, who live close by.

*Id.* at 248-49 (footnote omitted).

Plaintiff is correct that, as in *Rogers*, his ADLs "are not comparable to typical work activities." *Id.* at 248. However, in *Rogers*, the Sixth Circuit also found that *none* of the ALJ's stated reasons for discounting Rogers' credibility were supported by substantial evidence. In particular, the Sixth Circuit disapproved of the ALJ's reliance on the lack of objective medical evidence, emphasizing that Rogers had fibromyalgia, a condition not amendable to objective medical testing:

[T]he nature of fibromyalgia itself renders such a brief analysis and over-emphasis upon objective findings inappropriate. *See Canfield v. Comm'r of Soc. Sec.*, No. CIV.A.01–CV–73472–DT, 2002 WL 31235758, at *1 (E.D.Mich. Sept.13, 2002) (it would be "nonsensical to discount a fibromyalgia claimant's subjective complaints of pain based upon lack of objective medical evidence, as such evidence is generally lacking with fibromyalgia patients"). By focusing on purely objective evidence, the ALJ failed to discuss or consider the lengthy and frequent course of medical treatment or the nature and extent of that treatment, the numerous medications Rogers has been prescribed, the reasons for which they were prescribed, or the side effects Rogers testified she experiences from those medications.

*Id.* at 248.

Unlike Rogers' fibromyalgia, Plaintiff's DDD is amenable to testing. Also, the ALJ in this case provided additional reasons for refusing to fully credit Plaintiff's subjective complaints, which Plaintiff has not challenged. Certainly, the two reasons provided by the ALJ about Plaintiff's conservative treatment during the relevant period is well supported in the record. Finally, the Court finds no fault with the ALJ's rejection of Plaintiff's description of his ADLs as being "a complete lack of significant activity in his daily life" [Doc. 23 at Page ID # 712]. Certainly, Plaintiff has severe limitations and his daily activities do not equate to all exertional levels of work. Nevertheless, the Court finds no error with the ALJ's determination that Plaintiff failed to show he was incapable of a reduced range of sedentary work in spite of his limitations.

Accordingly, the Court finds Plaintiff's last issue to be without merit. His motion will be denied in this regard.

## V. CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

1) Plaintiff's motion for summary judgment [Doc. 22] is **DENIED**;

2) The Commissioner's motion for summary judgment [Doc. 24] is **GRANTED**; and

3) The Commissioner's decision denying benefits is **AFFIRMED**.


SO ORDERED.

ENTER:

s/ _Susan K. Lee_
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE